UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| EVELINA HARRIS | * | CIVIL ACTION NO.: |
| And WINTHROP CARRIE | * | 2:18-CV-03317 |
| | * | |
| | * | JUDGE: IVAN L.R. LEMELLE |
| VERSUS | * | MAGISTRATE:   KAREN   WELLS |
| | | ROBY |
| | * | |
| CELADON TRUCKING SERVICES, INC., | * | |
| TRANSPORTATION INSURANCE CO. | * | |
| AND MARVIN REGISTER | * | |
| | * | |

**********************************************************************************

## DEFENDANTS' MEMORANDUM IN OPPOSITION TO
## MOTION TO QUASH SUBPOENA FILED BY GUARDIAN CARE, L.L.C.

**NOW INTO COURT**, through undersigned counsel, come defendants, Celadon Trucking

Services, Inc., ACE American Insurance Company, and Marvin Register (collectively the

"Defendants"), who respond to the Motion to Quash Subpoena (R. Doc. 41) filed by Guardian Care,

L.L.C. ("Guardian Care").  The subpoena duces tecum in question was served upon Guardian Care

on July 2, 2019 and requested medical and billing records related to the treatment of Winthrop Carrie

("Plaintiff") at its facility from April 10, 2017[1] to the present, as well as information addressing the

credibility and potential bias of Guardian Care (the "Subpoena").[2]  Guardian Care filed the instant

Motion to Quash on July 15, 2019—one day prior to the July 16, 2019 return date of the Subpoena.

In its Motion, Guardian Care incorrectly argues that the Subpoena should be quashed because:

I.  The Subpoena, as a whole, requests irrelevant information and is overbroad and
unduly burdensome in that it "requests the production of documents and information
that have nothing to do with the nature and extent of injuries and medical treatment
received by [Winthrop Carrie]…"; and

II.  Specifically, in regard to items twenty-seven (27); twenty-eight (28); and twenty-nine
(29) of the Subpoena, Defendants are not entitled to information regarding Guardian
Care's patient referral practice and relationships with litigation funding companies

---

[1] The collision that forms the basis of this suit occurred on April 10, 2017.
[2] *See* Exhibit "A" to Motion to Quash filed by Guardian Care.

because Defendants have not established that Guardian Care has a "track record" of treating patients in litigation.

As discussed herein, these arguments fail because:

I.    Items one (1) through twenty-six (26) of the Subpoena specifically request medical and billing information related to the medical treatment of Plaintiff at Guardian Care from April 10, 2017 to the present and, by Guardian Care's own admission, are discoverable. Moreover, Guardian Care has completely failed to address, respond, and/or object to these items.  In doing so, Guardian Care has waived all grounds for objection to same.

II.   Information regarding Guardian Care's patient referral practice and relationships with litigation funding companies is discoverable and admissible for establishing the credibility and bias of Guardian Care and its physicians—whose "track record" of treating patients in litigation is well established and warrants further discovery.

## BACKGROUND

As the Court is aware, this litigation is one of several before this Court that arises out of a motor vehicle collision that occurred on Interstate 10 East in New Orleans near the Louisa Street exit. Specifically, this matter arises out of a motor vehicle collision that occurred on April 10, 2017 wherein a tractor-trailer operated by Marvin Register on behalf of Celadon allegedly side-swiped a vehicle driven by Darriona Broussard and in which Plaintiff and Evelina Harris were passengers.

Plaintiff is alleging significant injuries as a result of the collision.  Specifically, Plaintiff is alleging neck and back injuries that required surgical intervention.  In response to written discovery, Plaintiff identified his treating physicians—Drs. Eric Lonseth and Peter Liechty—and produced select medical records and bills which indicate that Plaintiff has incurred approximately $390,000 in billed medical expenses to date.  Despite being a Medicaid recipient, a significant majority of Plaintiff's billed medical expenses were billed to third-party funding companies Total Medical Concepts, L.L.C. ("Total Medical Concepts"), and Medport, LA, L.L.C. ("Medport").  Notably, Plaintiff testified in his deposition that he never received any bills in connection with his medical treatment[3] and first learned

---

[3] Deposition of Winthrop Carrie, attached hereto as Exhibit "A," at pp. 205:1-7; 210:23-211:2.

of the costs associated with his treatment, the cost of which surprised him, during his deposition.[4]  He further testified that he was unfamiliar with Total Medical Concepts and Medport[5], was unaware if they paid for his medical bills[6], and did not recall signing any agreements with either entity.[7]

Following the accident, Plaintiff initially treated with Metropolitan Health Group, L.L.C., before being referred to Diagnostic Imaging Services, Inc., an imaging center affiliated with Guardian Care, for MRIs of his cervical and lumbar spine.  Notably, Diagnostic Imaging Services, Inc., located at 3434 Houma Boulevard, and Guardian Care, located at 1912 Clearview Parkway, are a mere two (2) miles apart from each other and share the same officer and registered agent—Pedro Galeas.[8]  Thereafter, on July 20, 2017, Plaintiff began treating with Dr. Liechty of One Spine Institute for his neck and back complaints.  Despite having his own clinic located at 3530 Houma Boulevard, Dr. Liechty chose to treat Plaintiff at Guardian Care—two (2) miles away.  Dr. Liechty thereafter referred Plaintiff to Dr. Lonseth of Lonseth Interventional Pain Centers for injection therapy, including an epidural steroid injection on August 3, 2017, medial branch blocks at L3-5 on August 31, 2017, and a sacroiliac joint injection on September 21, 2017.  Similar to Dr. Liechty, Dr. Lonseth administered the aforementioned injections to Plaintiff at Guardian Care—despite having his own clinic two (2) miles away.  In order to treat Plaintiff's continued complaints, Dr. Liechty ultimately performed a sacroiliac joint fusion and anterior cervical discectomy and fusion on Plaintiff at Crescent View Surgery Center.  Following these procedures, Plaintiff continued post-operative treatment with Dr. Liechty at Guardian Care.  To date, Plaintiff has incurred approximately $60,000 in billed medical expenses relating to his

---

[4] *Id.* at p. 247:1-10.
[5] *Id.* at p. 246:12-14.
[6] *Id.* at p. 246:8-20.
[7] *Id.* at pp. 159:21-160:15.
[8] *See* Louisiana Secretary of State Business Filings for Diagnostic Imaging Services, Inc., and Guardian Care, L.L.C., attached hereto *in globo* as Exhibit "B."

treatment at Guardian Care—at least $20,000 of which has been billed to Total Medical Concepts[9] and Medport.[10]

On June 25, 2019, Defendants propounded the instant Subpoena to Guardian Care. The subpoena requested medical and billing records related solely to the treatment of Plaintiff at Guardian Care from April 10, 2017 to the present and had a return date of July 16, 2019. Guardian Care was personally served with the Subpoena on July 2, 2019.[11] Thereafter, on July 15, 2019, one day prior to the July 16th return date, Guardian Care filed the instant Motion to Quash. Notably, Guardian Care failed to confer or even contact undersigned counsel to discuss the Subpoena prior to filing its Motion.

As discussed herein, the records requested by Defendants are highly relevant to investigate Plaintiff's alleged injuries, the treatment and costs associated with same, and the credibility and bias of Guardian Care and its physicians. Given what is already known and discovered to date from the public record and the exchanging of discovery amongst the parties, Defendants should not be denied the opportunity for further discovery on these issues. The information and documents that Defendants seek are relevant and/or reasonably calculated to lead to relevant evidence. As such, Guardian Care's Motion should be denied.

## LAW AND ARGUMENT

### I.   Medical and billing information related to the treatment of Plaintiff at Guardian Care from April 10, 2017 to the present is discoverable.

Guardian Care generally objects to the Subpoena, as a whole, on the grounds that it requests irrelevant information and is overbroad and unduly burdensome in that it "requests the production of documents and information that have nothing to do with the nature and extent of injuries and medical treatment received by [Plaintiff]…". In doing so, Guardian Care conveniently ignores the fact that

---

[9] *See* Health Insurance Claim Forms for Total Medical Concepts, attached hereto as Exhibit "C."
[10] *See* Health Insurance Claim Forms for Medport, attached hereto as Exhibit "D."
[11] *See* Proof of Service, attached hereto as Exhibit "E."

items one (1) through twenty-six (26) explicitly request information relating to the treatment received by Plaintiff at Guardian Care from the date of the collision to the present—information that is clearly discoverable by its own admission.[12]

Rule 26(b)(1) of the Federal Rules of Civil Procedure governs the scope of discovery. Under Rule 26, a party "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense."[13] A relevant discovery request seeks information that is "either admissible or reasonably calculated to lead to the discovery of admissible evidence."[14] The scope of discovery is not without limits, however, and the Court may protect a party from responding to discovery when: (i) it is unreasonably cumulative or duplicative, or obtainable from some other less-burdensome source; (ii) the party seeking discovery has had the opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit.[15]

Rule 45 governs the issuance of subpoenas to obtain discovery from non-parties. The party issuing the subpoena "must take reasonable steps to avoid imposing an undue burden or expense on a person subject to the subpoena."[16] Additionally, the Rule provides that, on a timely motion, the issuing court must quash or modify a subpoena if it requires disclosure of privileged or other protected matter, or otherwise subjects the subpoenaed person to undue burden.[17] The moving party has the burden of demonstrating that compliance with the subpoena would be unduly burdensome.[18] A court's consideration of a motion to quash a third-party subpoena as unduly burdensome should be governed by the following factors: (1) relevance of the information sought; (2) the requesting party's

---

[12] *See* Exhibit "A" to Motion to Quash filed by Guardian Care.
[13] Fed. R. Civ. P. 26(b)(1).
[14] *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles,* 894 F.2d 1482, 1484 (5th Cir.1990) (quoting Fed. R. Civ. P. 26(b)(1)).
[15] Fed. R. Civ. P. 26(b)(2)(C).
[16] Fed. R. Civ. P. 45(d)(1).
[17] Fed. R. Civ. P. 45(d)(3).
[18] *See Wiwa v. Royal Dutch Petroleum Co.,* 392 F.3d 812, 818 (5th Cir.2004).

need for the documents; (3) the breadth of the document request; (4) the time period covered by the request; (5) the particularity of the description of the documents; and (6) the burden imposed.[19] Subpoenas issued for discovery purposes, such as those at issue here, are also subject to the discovery limitations outlined in Rule 26(b).[20]

In the present case, Guardian Care is a medical facility that provided treatment to Plaintiff for the injuries he allegedly sustained in the collision with Mr. Register.  As such, there is no question that the treatment and billing records related to Plaintiff's treatment at Guardian Care from the date of the collision to the present are relevant to this litigation and discoverable.  Indeed, without this information, Defendants cannot effectively evaluate said injuries or the necessity and/or reasonableness of the corresponding medical expenses associated with same.  Furthermore, information regarding the payment of Plaintiff's medical bills and the financial arrangements between Plaintiff's healthcare providers, such as Guardian Care, and third-party funding companies, such as Total Medical Concepts and Guardian Care, has been held by this Court to be relevant and admissible in addressing the collateral source rule[21] and the bias of Plaintiff's treating physicians.[22]  The production of the requested information is commonplace for any medical provider treating a patient involved in personal injury litigation and imposes no undue burden on Guardian Care—who has been subpoenaed for the very same information on numerous occasions.

---

[19] *Wiwa,* 392 F.3d at 818.

[20] *See Hussey v. State Farm Lloyds Ins. Co.,* 216 F.R.D. 591, 596 (E.D.Tex.2003); 9A Wright & Miller, Federal Practice & Procedure 2d § 2459 ("Of course, the matter sought by the party issuing the subpoena must be reasonably calculated to lead to admissible evidence as is required by the last sentence of Rule 26(b)(1).")

[21] *See Williams v. IQS Ins. Risk Retention*, No. CV 18-2472, 2019 WL 937848, at *3 (E.D. La. Feb. 26, 2019) (holding that the collateral source rule does not apply to the difference between the full amount of billed medicals and the discounted reimbursement received in full satisfaction of said bills from a third-party funding company when the plaintiff did not suffer any diminution in patrimony in order to obtain said discounts).

[22] *See Thomas v. Chambers*, No. CV 18-4373, slip op. at 12 (E.D. La. April 26, 2019) (holding that evidence of financial arrangement between plaintiffs' healthcare providers and third-party funding companies was relevant in assessing bias of treating physicians and admissible to impeach the credibility of plaintiffs' treating physicians who will testify).  This Court's opinion in *Thomas v. Chambers* is attached hereto as Exhibit "F."

Based on the foregoing, the requested information is both relevant and discoverable; however, even if Guardian Care had a legitimate basis for objecting to the production of the requested information, these objections were waived by Guardian Care's failure to make said objections sufficiently specific and supported by the record.[23]  Indeed, Rule 45 provides protection to non-parties by providing that the subpoenaed party serve upon the party or attorney designated in the subpoena written objections consisting of the specific bases for failure to respond.[24]  Here, Guardian Care failed to confer or even contact undersigned counsel to discuss the Subpoena prior to filing the instant Motion.  To date, Guardian Care has failed to produce a single document in response to the Subpoena or provide a privilege log identifying the specific reasons for withholding responsive documents. Instead, Guardian Care simply filed the instant Motion—which completely fails to address items one (1) through twenty-six (26) of the Subpoena, much less provide specific objections supported by the record.  Indeed, the Motion vaguely objects to the Subpoena as a whole before focusing on items twenty-seven (27); twenty-eight (28); and twenty-nine (29) of the Subpoena.  By failing to make specific objections to items one (1) through twenty-six (26), Guardian Care has effectively waived any objections to these requests.  Therefore, the instant Motion must be denied, and Defendants request that this Honorable Court issue an Order directing Guardian Care to produce information and documents responsive to items one (1) through twenty-six (26) of the Subpoena.

## II.   Information regarding Guardian Care's patient referral practice and relationships with litigation funding companies is discoverable.

While the instant Motion generally objects to the Subpoena as a whole, it appears to be directed to items twenty-seven (27); twenty-eight (28); and twenty-nine (29) of the Subpoena, which request information regarding Guardian Care's patient referral practice and relationships with litigation

---

[23] *See U & I Corp. v. Advanced Med. Design, Inc.*, No. 806CV2041T17EAJ, 2007 WL 4181900, at *10-11 (M.D. Fla., Nov. 26, 2007) (rejecting objection to subpoena duces tecum).
[24] *See* Fed. R. Civ. P. 45(d)(2)(B).

funding companies and specific law firms:

27. Copies of any and all documentation concerning patient referrals to or from Medport, LA, L.L.C.; Total Medical Concepts, L.L.C.; M.D. Billing Services, L.L.C.; Crescent View Surgery Center; Eric Lonseth, M.D., APMC d/b/a Lonseth Interventional Pain Centers; One Spine Institute, L.L.C.; Vanessa Motta; Motta Law, L.L.C.; Lionel Sutton, III; The King Firm, L.L.C.; Irpino Law Firm, L.L.C.; Pandit Law Firm, L.L.C.; and Baer Law, L.L.C.

28. A list of all patients treated at your facility who were represented by Vanessa Motta; Motta Law, L.L.C.; Lionel Sutton, III; The King Firm, L.L.C.; Irpino Law Firm, L.L.C.; Pandit Law Firm, L.L.C.; and/or Baer, Law, L.L.C.; All identifying information of any patients other than Winthrop Carrie may be redacted for privacy concerns.

29. A list of all patients treated at your facility who had payments made to you on their behalf by Medport, LA, L.L.C., Total Medical Concepts, L.L.C., M.D. Billing Services, L.L.C., and/or Crescent View Surgery Center.   All identifying information of any patients other than Winthrop Carrie may be redacted for privacy concerns.[25]

Guardian Care objects to these requests on the grounds that they seek irrelevant information and cites *Haydel v. State Farm Mutual Automobile Insurance Co.*[26], and *Williams, et al., v. IQS Insurance Risk Retention, et al.*[27], for the proposition that Defendants are not entitled to the requested information unless they can establish that Guardian Care has a "track record" of treating patients in litigation.  Specifically, Guardian Care argues that Defendants "have not provided a basis of fact that would indicate to this Court that there is a clear bias that Guardian Care exercises in its delivery of healthcare services."

The Federal Rules of Civil Procedure provide that "parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."[28]  "Information within this scope of discovery need not be admissible in evidence to be discoverable."[29]  Critically "[a] party clearly has the right to inquire as to the bias or prejudice of any witness."[30]  "Evidence regarding witness credibility and potential bias is relevant."[31]  Thus, discovery

---

[25] *See* Exhibit "A" to Motion to Quash filed by Guardian Care.
[26] CIV. A, No. 07-939, 2009 WL 10679318, at 2 (M.D. La. July 27, 2009).
[27] 2009 WL 937848.
[28] Fed. R. Civ. P. 26(b)(1).
[29] *Id.*
[30] *Rogers v. Crosby Tugs, Inc.,* No. CV 12-2453, 2016 WL 9406114, at *1 (E.D. La. Jan. 22, 2016).
[31] *Firefighters' Ret. Sys. v. Citco Grp. Ltd.,* No. CV 13-373-SDD-EWD, 2018 WL 1229752, at *3 (M.D. La. Mar. 9, 2018).

of facts which may tend to prove bias are clearly discoverable under Rule 26 as reasonably calculated to lead to the discovery of admissible evidence.

As this Court is aware, this litigation is one of many—approximately eighty-five (85)—arising out of similar disputed rear-end/side-swipe accidents with eighteen wheelers on Interstate 10 in New Orleans East within a few miles of the Louisa Street Exit.  Notably, an examination of the public record reveals that several of these cases involve immediate family members of Evelina Harris, the other passenger in Plaintiff's vehicle.  For example, Evelina Harris's cousins, Ryan Harris and Tara Blount, were involved in an accident on Interstate 10 East near Interstate 610 on March 29, 2017; Evelina Harris's mother, Shirley Morgan, and Evelina Harris's niece, Nyla Arnold, were involved in an accident on Interstate 10 East near Dowman on April 12, 2017; and Evelina Harris's sister, Shirley Harris, was involved in an accident on Interstate 10 East near milepost 242 on April 24, 2017.  In addition to involving similar rear-end/side-swipe accidents, a significant number of the aforementioned cases also involve representation by the same counsel (including Vanessa Motta; Motta Law, L.L.C.; Lionel Sutton, III (**Plaintiff's original attorney in this matter**); The King Firm, L.L.C.; Irpino Law Firm, L.L.C.; Pandit Law Firm, L.L.C.; and/or Baer, Law, L.L.C.); treatment by the same physicians (including **Dr. Lonseth; Dr. Liechty; and Guardian Care**); and medical funding by the same litigation funding companies (including **Total Medical Concepts and Medport**).

In reviewing the public record, it is apparent that Guardian Care and its associated physicians, Drs. Lonseth and Liechty, have treated claimants involved in the following related cases and been subpoenaed for information similar to that requested by the Subpoena:

> *Buckles v. Acceptance Indemnity Insurance Company, et al.*
> U.S. District Court
> Eastern District of Louisiana
> Docket No.: 2:18-cv-09360

| |
|---|
| *Williams, et al. v. IQS Insurance Risk Retention Group, Inc., et al.*<br>U.S. District Court<br>Eastern District of Louisiana<br>Docket No.: 2:18-cv-02472 |
| *Kyonne Walker and Curtis Walker  v. Arch Insurance Co., et al.*<br>Civil District Court<br>Orleans Parish<br>Docket No.: 2017-242 |
| *Darnell Harris and Selita Harris v. U.S. Xpress, Inc., et al.*<br>Civil District Court<br>Orleans Parish<br>Docket No.: 2016-12685 |
| *Morgan, et al. v. Surim Trucking Express, et al.*<br>U.S. District Court<br>Eastern District of Louisiana<br>Docket No.: 2:18-cv-00571 |

Guardian Care's involvement in these cases clearly demonstrates its "track record" of treating patients in litigation and more particularly, in strikingly similar cases brought by family members who were treated by the same medical providers and funded by the same funding companies.

In addition to the foregoing, Guardian Care's "track record" is further evidenced by archived excerpts of its website from 2018, prior to an apparent redesign, available in the public record.  Indeed, exhibits to pleadings filed in *Kyonne Walker, et al., v. Arch Insurance Company,* contain excerpts that explain how Guardian Care is an interventional pain management clinic that "specializes in meeting the unique needs of patients who have been injured in an automobile accident, on the job or who have experienced a maritime injury."[32]  With respect to personal injury plaintiffs, Guardian Care specifically noted:

> "Following the accident, you will have serious decisions to make about your medical care and reimbursement from your insurance carrier, workers compensation claim or from the other party involved in the accident.  In the special circumstances, we believe

---

[32] *See* Guardian Care Archived Website Printout, formerly available at https://www.guardiancare-no.com/resource-enter, attached hereto as Exhibit "G."

insurance payments and/or financial judgments should not stand in the way of our patient's care."[33]

The website further stated, "…we also work with your attorney to properly document your treatment. Guardian care also accepts attorney liens so payment does not get in the way of your treatment."[34] As to funding, the website further noted that "Guardian Care offers options to help our patients who are having difficulty meeting their financial obligations for their treatments."[35] Notably, this information has been removed from Guardian Care's current version of its website.

In the present case, a significant portion of Plaintiff's billed medical expenses from Guardian Care were billed to Total Medical Concepts and Medport—who are in the business of funding medical treatment in personal injury litigation. Similar to Guardian Care's website, the websites of Total Medical Concepts and Medport demonstrate a clear "track record" and bias related to the medical treatment of personal injury plaintiffs. Guardian Care's relationships with these entities warrants further discovery as to Guardian Care's credibility and potential bias.

Although the website of Total Medical Concepts recently went offline, the website as it appeared in August of 2018 is still available through the Internet Archive Wayback Machine.[36] The site proclaimed that, "TMC is the greatest concept to happen to a personal injury victim by financing and facilitating all of your health care needs.[37] Under the Frequently Asked Questions section, the question, "When should I use Total Medical Concepts?" is answered as follows:

> The best use of TMC is immediately upon signing with the attorney of your choice. We work with you and your attorney to immediately provide you the medical care you need from your injury resulting from an accident. Once you have begun with our network of physicians, we will help coordinate all of your testing and needs to your attorney to keep them informed of your treatment. When you use TMC from the inception, you will not have to pay any costs upfront for testing or surgery until your case settles.[38]

---

[33] *Id.*
[34] *Id.*
[35] *Id.*
[36] https://web.archive.org/web/20180816151708/http://totalmedicalconceptsllc.com/index.html
[37] *Id.*
[38] https://web.archive.org/web/20180816152942/http://totalmedicalconceptsllc.com/faqs.html

**Notably, Guardian Care and Dr. Eric Lonseth were listed as being a part of Total Medical Concepts' Physician Network**.[39]

As for Medport, whose website is still active online, its website explains how "Medport is your practice's personal injury solution."[40]   It goes on to explain that "[w]e help quality physicians economically treat personal injury victims on a lien, which means your clients can get the best possible care.  And you look like a hero."[41]  The website also reveals that physicians who work with Medport, such as Guardian Care, have their records stored on Medport's online repository.[42]  In the Attorneys section of Medport's site, it explains that "While working with us, your office has full access to MoveDocs, our HIPPA-compliant online repository that places all related bills and records at your fingertips.  That means no more requesting documents one by one when writing demand letters."[43]

In light of the foregoing, Guardian Care's "track record" is well established, and thus Defendants, pursuant to Rule 26, clearly have the right to inquire as to the potential bias or prejudice of Guardian Care and its physicians.  Indeed, information such as the financial arrangements between Plaintiff's healthcare providers, such as Guardian Care, and third-party funding companies, such as Total Medical Concepts and Guardian Care, has been explicitly held by this Court to be relevant and admissible in addressing the bias of Plaintiff's treating physicians.[44]  Therefore, the instant Motion should be denied, and Defendants request that this Honorable Court issue an Order directing Guardian Care to produce information and documents responsive to items twenty-seven (27); twenty-eight (28); and twenty-nine (29) of the Subpoena.

---

[39] https://web.archive.org/web/20180816151618/http://totalmedicalconceptsllc.com/network.html
[40] https://medport.com/howitworks/
[41] https://medport.com/attorneys/
[42] *Id.*
[43] *Id.*
[44] *See Thomas v. Chambers*, No. CV 18-4373, slip op. at 12 (E.D. La. April 26, 2019) (holding that evidence of financial arrangement between plaintiffs' healthcare providers and third-party funding companies was relevant in assessing bias of treating physicians and admissible to impeach the credibility of plaintiffs' treating physicians who will testify).  This Court's opinion in *Thomas v. Chambers* is attached hereto as Exhibit "F."

## CONCLUSION

Based on the foregoing, Defendants respectfully request that this Honorable Court deny the instant Motion and issue an Order directing Guardian Care to produce information and documents responsive to the Subpoena.

Respectfully submitted,

*/s/ David M. Schroeter*
M. Davis Ready, T.A. (Bar No. 24616)
David M. Schroeter (Bar No. 36009)
SIMON, PERAGINE, SMITH & REDFEARN, L.L.P.
1100 Poydras Street, 30th Floor
New Orleans, Louisiana 70163
Telephone:          (504) 569-2030
Facsimile:          (504) 569-2999
***Attorneys for Defendants, Celadon Trucking Services, Inc., Ace American Insurance Company, and Marvin Register***

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served upon all known counsel of record by facsimile, by e-mail, by hand-delivery, or by placing a copy of same in the United States mail, postage prepaid and properly addressed, this **13th** day of August, **2019**.

*/s/ David M. Schroeter*